

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**
~~JOHN BEN CLIFFORD~~
~~ATTORNEY GENERAL~~

**AUSTIN 11, TEXAS**

Honorable O.P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-5207
Re: Can the Insurance Department
lawfully continue to license
the Mutual Benefit Health &
Accident Association, Omaha,
Nebraska, to conduct its busi-
ness in Texas under repealed
Chapter 5, Title 78, of the
Revised Civil Statutes of Texas
of 1925, and a related question.

Your request for an opinion on the above matters
has been received and carefully noted. We quote from your
request as follows:

"Re:   Mutual Benefit Health
& Accident Association,
Omaha, Nebraska.

"The Company was originally incorporated under
the laws of Nebraska on March 5, 1909 for a period
to expire March 5, 1939. On February 12, 1938 its
membership adopted charter amendment, which was ap-
proved and filed by the Director of Insurance of
Nebraska March 28, 1938 extending its corporate
life to March 5, 1989. Enclosed are photostatic
copies of its old and new charter and of its by-
laws as amended and filed with this Department from
time to time.

"It was originally admitted to Texas and li-
censed as a mutual assessment health and accident
company on March 17, 1920 under the provisions of
Chapter 4 of Title 71, R. C. S. 1911, which later
became Chapter 5 of Title 78, R. C. S. 1925. An-
nually thereafter to and including 1942 it was
licensed in like manner and under the same statu-
tory provisions to continue its operations in

Texas under such Chapter 5, though the latter was repealed by Section 18 of Acts 1929, 41st Leg., 1st C. S., p. 90, Ch. 40, as amended by Acts 1929, 2nd C. S., p. 99, Ch. 60, sec. 1. It has not yet been licensed for 1943.

"Please give us your opinion upon the following points:

"1. Can this Department lawfully continue to license such Company to conduct its business in Texas under such repealed Chapter 5 of Title 78?

"2. Are the present charter and by-laws of such company such as necessarily to constitute it a 'mutual assessment insurance company' fundamentally incompatible with the plan of operation of a 'mutual insurance company' of the kind governed by new Chapter 9 of Title 78 (Article 4860a, sections 1-19) as added by the 1929 Acts above cited, and thus necessarily debar it from qualifying to do business in Texas under section 13 of such Article 4860a?

" . . . . "

It is the opinion of this department that the first question asked by you should be answered in the affirmative, which answer makes it unnecessary to answer the second question asked by you. Our reasons for such holding are as follows:

Repealed Chapter 5, Title 78, of the Revised Civil Statutes of Texas of 1925, under which said company was originally licensed to do business in Texas was composed of Articles 4781, 4782 and 4783. Article 4782 provided for certain filing fees, Article 4783 excepted some companies from the provisions of said Chapter and Article 4781 was as follows:

"Art. 4781. (4791) Foreign assessment companies.--Companies or associations organized under the laws of any other State of the United States, carrying on the business of life or casualty insurance on the assessment or natural premium plan, having cash assets of a sum not less than one hundred thousand dollars, invested as required by the laws of this State regulating other insurance companies, shall be licensed by the Commissioner to do business in this State, and be subject only to

the provisions of this chapter. Such company or association shall first file with said Commissioner a certified copy of its charter, a written agreement appointing said Commissioner and his successor in office, to be its attorney, upon whom all lawful process in any action or proceeding against it may be served; a certificate under oath of its president and secretary that it is paying, and for the twelve months next preceding has paid, the maximum amount named in its policies or certificates in full; a statement under oath of its president and secretary of its business for the year ending on the thirty-first day of December preceding; a certified copy of its constitution and by-laws, and a copy of its policy and application; a certificate from the proper authority in its home State that said company or association is lawfully entitled to do business therein, and has at least one hundred thousand dollars surplus assets subject to its indebtedness. The Commissioner shall issue a license to any company or association complying with the provisions of this chapter. Every such company or association shall annually thereafter before such license is renewed, file with said Commissioner on or before the first day of March, a statement under oath of its president and secretary, or like officers, of its business for the year ending December 31 preceding."

Said Chapter 5 was repealed in 1929 by S. B. No. 37, page 90 of the General and Special Laws of the First Called Session of the 41st Legislature, Section 18 of said Act being in part as follows:

"SEC. 18. Chapters 5, 6, 9, 12, 13, 14, and 15 of Title 78, of the Revised Civil Statutes of 1925, and all other laws or parts of laws in conflict with the provisions of this Act, are hereby repealed; provided that such repeals and the provisions of this Act shall not apply to or affect any company or association of this State now doing business under the laws repealed, and they shall continue to be governed by the regulatory provisions of such laws. . . ."

The Second Called Session of said 41st Legislature, by S. B. No. 106, page 99 of the General Laws of said Session, amended said Section 18 of said original act, but no change was made in that part of same hereinabove set forth.

There would be no question as to the proper construction of this repealing law as contained in said Section 18 thereof but for the fact that the Legislature used the words "of this State" in describing the companies and associations to which such act should not apply, and both domestic and foreign companies had been licensed to do business under said repealed law.

A question as to the meaning of this savings clause was raised in the case of National Aid Life Association vs. Murphy, 78 S. W. (2) 223, writ dismissed, and Judge Looney of the Dallas Court of Civil Appeals, on December 1, 1934, construed same as follows:

"After defendant had been issued a permit to carry on its insurance business in this state, under the provisions of chapter 5, title 78 (article 4781 et seq.), the 41st Legislature repealed chapters 5, 6, 9, 12, 13, 14, and 15 of title 78 (article 4781 et seq.; art. 4860 et seq.; art. 4933 et seq.), effective June 19, 1929 (see Acts 1929, 1st Called Sess., chapter 40, pp. 90-95 (Vernon's Ann. Civ. St. art. 4860a-1 et seq.)). The repealing section of the act of 1929 (see Vernon's Ann. Civ. St. art. 4860a--18) contains a saving clause in favor of insurance companies, then doing business, as follows: 'Sec. 18. Chapters 5, 6, 9, 12, 13, 14, and 15 of Title 78, of the Revised Civil Statutes of 1925, and all other laws or parts of laws in conflict with the provisions of this Act, are hereby repealed; provided that such repeals and the provisions of this Act shall not apply to or affect any company or association of this State now doing business under the laws repealed, and they shall continue to be governed by the regulatory provisions of such laws. * * *'

"The contention of plaintiff is based on the idea that the saving clause does not include foreign insurance companies, such as defendant, but applies only to domestic concerns, and that, since the effective date of the repealing act, defendant has conducted its business in Texas without authority of law. That this is a correct statement of plaintiff's position is revealed by the following excerpts from the written argument of her attorneys on file. They said: 'It is manifest from the repealing act above quoted that the provisions of the statute excepting from its application only those

companies or associations of this state which were
then doing business under the laws repealed did not
apply to foreign insurance companies and that no
foreign company of the description contained in the
repealing act could thereafter do business under
the provisions of articles 4781, 4782 and 4783, the
act repealed.  * * *  But appellee contends that,
in view of the express and unambiguous provisions
of the statute, withdrawing the right of the ap-
pellant company to do business in Texas, no con-
struction of the statute was necessary and the mere
fact that the insurance commissioner without au-
thority issued a license or permit to appellant
did not have the effect to amend the statute and
write an exception therein in favor of appellant
and associations in like situation.'

"We cannot accept as correct plaintiff's idea
as to the meaning of the statute under considera-
tion; on the contrary, believe that all associations
and companies, domestic or foreign, legally doing
business in the state when the statutes were repealed,
were permitted by the saving clause, quoted above,
to continue and have their permits renewed."

The general rule as to the interpretation by the
Legislature of laws passed by it is set forth in 39 Texas
Jurisprudence, Section 132, pages 248-251, in the following
language:

"Doubtless the Legislature, in enacting, amend-
ing or repealing a statute, may be presumed to have
known facts of common notoriety in the State, as
well as any circumstances or conditions affecting or
relating to the particular enactment.  And it may
be presumed that the Legislature 'knew', 'had in
mind', or 'was familiar with' the 'law of the land',
that is, the Constitution, the common law, existing
statutes and the effect thereof; also prior decisions
of the courts,--at least those of last resort,--per-
taining to the subject-matter.

"The Legislature is presumed to have under-
stood the meaning of language that it employed, and
to have known the construction placed upon the same
or a similar statute by the appellate courts and by
executive or administrative officers.  And it may be
presumed, in a proper case, that the Legislature has
acquiesced in the construction of a particular act,

or that if it had not been satisfied with
such construction it would have changed the
verbiage of the law so as to show a contrary
intention.

". . . ."

After the passage of this repealing Act in 1929
containing the saving clause above referred to, the Legis-
lature has referred thereto as hereinafter shown.

In 1936, the 44th Legislature, in its Third Called
Session and by House Bill No. 37, page 2040 of the General
and Special Laws of such session, which was an omnibus tax
measure, amended Article 7064 of the Revised Civil Statutes
of Texas of 1925, which said Article 7064 provided for the
filing of reports and payment of taxes by every kind of in-
surance business except life and other than fraternal benefit
associations, and in said amendment made the following pro-
visions, quoting from page 2075:

". . . however, foreign assessment life and
casualty companies admitted to do business in Texas,
under Chapter 5, Title 78, Revised Statutes 1925,
shall also pay taxes under and in accordance with
the provisions of this Article."

The 45th Legislature, at its Regular Session in
1927 and by House Bill No. 441, page 525 of the General and
Special Laws of said session, attempted to clarify the law
in regard to payment of taxes by certain insurance companies.
The caption of said act was in part as follows:

". . . and further providing for the taxing
of foreign assessment life and casualty companies
admitted to do business in Texas under Chapter 5,
Title 78, Revised Civil Statutes of Texas of 1925;
. . . ."

In the body of said act, page 527 and in amending
Article 7064, the following provision was made:

". . . however, foreign assessment life and
casualty companies admitted to do business in
Texas, under Chapter 5, Title 78, Revised Civil
Statutes of Texas of 1925, shall also pay a tax
of three and twenty-five hundredths (3.25) per
cent of their gross premium receipts from Texas
business, as such receipts are herein defined.
. . ."

In 1939, the 46th Legislature, during its Regular Session, passed S. B. No. 313, page 424 of the General Laws of said session, which provided for the payment of taxes by foreign assessment life and casualty companies, the caption and Section 1 of said act being as follows:

"An Act providing for taxing the premium receipts of foreign assessment life and casualty companies now admitted to do business in Texas, under Chapter V, Title 78, Revised Civil Statutes of Texas, 1925, as amended by Senate Bill No. 37, Chapter 40, Acts of 1929, First Called Session, Forty-first Legislature, as amended by Senate Bill No. 106, Chapter 60, Acts of 1929, Second Called Session, Forty-first Legislature, in the event any such company should hereafter reorganize, amend its charter or otherwise change its plan of operation so that it shall not be subject to the provisions of said Chapter V, Title 78, Revised Civil Statutes of Texas, as amended, and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"SECTION 1. That if any foreign assessment life or casualty company now licensed to do business in this State under the provisions of Chapter V, Title 78, Revised Civil Statutes of Texas, 1925, as amended by Senate Bill No. 37, Chapter 40, Acts of 1929, First Called Session, Forty-first Legislature, as amended by Senate Bill No. 106, Chapter 60, Act of 1929, Second Called Session, Forty-first Legislature, shall hereafter reorganize, amend its chapter or otherwise change its plan of operation so that it shall no longer be subject to the provisions of said Chapter and the other laws then applicable to such companies, it shall thereafter, as to all policies written before such change, be governed and taxed as provided by the particular laws under which it operated and was taxed at the time of such change, but as to all policies thereafter written it shall be governed and taxed under the laws to which it has then become subject by such change."

The 46th Legislature, at its said Regular Session, also passed House Bill No. 556, page 638 of the General Laws

of said session, which was an act to further amend Article 7064 and in which the following provision was made:

> ". . . however, foreign assessment casualty companies admitted to do business in Texas under Chapter 5, Title 78, Revised Civil Statutes of Texas of 1925, shall also pay a tax of three and twenty-five hundredths (3.25) per cent of their gross premium receipts from Texas business, as such receipts are herein defined. . . ."

In the Omnibus Tax Law passed by the 47th Legislature at its Regular Session in 1941, page 269 of the General and Special Laws of said session, said Article 7064 was again amended, and in said amendment the following language was used, quoting from page 334 of said Session Laws:

> ". . . however, foreign assessment casualty companies admitted to do business in Texas under Chapter 5, Title 78, Revised Civil Statutes of Texas of 1925, shall also pay a tax of four and five hundredths (4.05) per cent of their gross premium receipts from Texas business, as such receipts are herein defined. . . ."

Another rule of construction of statutes which we think is entitled to considerable weight herein is that pertaining to executive or departmental construction. Your statement shows that the Board of Insurance Commissioners has consistently construed said repealed Chapter 5, and particularly the savings clause thereof, to permit the continued licensing of this company to do business in Texas and this has been done over a period of fourteen years. The general rule relative to departmental construction is laid down in 39 Tex. Jur., sec. 126, pp. 235-238, as follows:

> "§126.  Executive or Departmental Construction.-- The courts will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction so given it is reasonable.  In other words, the judiciary will adhere to an executive or departmental construction of an ambiguous statute unless it is clearly erroneous or unsound, or unless it will result in serious hardship or injustice, although it might otherwise have been inclined to place a different construction upon the act.

"The rule above stated is particularly applicable to an administrative construction of long standing, where valuable interests or rights have been acquired or contracts have been made, or where a law that has been uniformly construed by those charged with its enforcement has been reenacted without a change of language. It has been variously applied to constructions, opinions or rulings of the Governor, the Attorney General, the Comptroller, the Secretary of State, the Treasurer, the Land Commissioner, the Compensation Claim Board, and the State Department of Education. . . ."

This rule is followed by the court in the case of Houston & North Texas Motor Freight Lines, Inc., et al. v. Johnson et al., 159 S. W. (2) 905, in dealing with the construction given to an Act by the Railroad Commission, which said holding is as follows:

"The Railroad Commission has, it appears, since 1931, been authorizing sales of portions of certificates where the certificate is severed 'horizontally', and is not divided 'lengthwise'. In administering its duties under Section 5, Art. 911b, the Commission is bound to construe the meaning thereof. The Legislature, which has amended the Act, of which Art. 911b forms a part, several times since 1931, has never seen fit to in any way indicate that the Commission has not given the true interpretation to Sec. 5, Art. 911b. And it is well settled that the construction given to an act by one whose duty it is to administer it is entitled to great weight. Cunningham v. Cunningham, 120 Tex. 491, 40 S. W. 2d 46, 75 A. L. R. 1305; Harris County v. Crooker, 112 Tex. 450, 248 S. W. 652. And such construction should be adhered to unless clearly erroneous. Western Public Service Co. v. Meharg, 116 Tex. 193, 288 S. W. 141, 292 S. W. 168."

Said Chapter 5, Title 78, though repealed in 1929, has been referred to by the Legislature as still being in effect insofar as companies affected by said saving clause are concerned, said references to said law by the Legislature having been after the opinion construing same was written by Judge Looney in December, 1934. This fact alone should be sufficient to authorize you to continue to license this company to do business in Texas under said repealed law, but,

Honorable O. P. Lockhart, Page 10, (O-5207)


in addition thereto, Judge Looney has held likewise and your department has continuously so construed said law since 1929. Therefore, it is our opinion that you have authority to continue to license this company to do business in Texas as heretofore.

Trusting that this satisfactorily answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  /s/ Jas. W. Bassett
Jas. W. Bassett
Assistant

JWB:mp:eac

APPROVED MAY 4, 1945

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE

BY G.C.B.
CHAIRMAN